IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TREYVAUGHN SHERIDAN          : | |
| : | CIVIL ACTION |
| v.                                         : | |
| : | NO. 10-3987 |
| MICHAEL CURLEY, ET AL.    : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                    **MARCH  16 , 2015**

Presently before the Court is Petitioner Treyvaughn Sheridan's Petition for Writ of Habeas Corpus (ECF No. 1), Magistrate Judge M. Faith Angell's Report and Recommendation, recommending that the Petition be denied and dismissed without an evidentiary hearing (ECF No. 19) and Petitioner's Objections to the Report and Recommendation (ECF No. 24).  For the following reasons, we will overrule Petitioner's Objections, approve and adopt the Report and Recommendation and deny and dismiss the Petition for Writ of Habeas Corpus without an evidentiary hearing.

**I.     BACKGROUND**

On March 6, 2007, after a full colloquy, Petitioner entered a negotiated plea of guilty to (i) possession with intent to deliver a controlled substance and (ii) criminal conspiracy before the Honorable Glenn B. Bronson of the Court of Common Pleas of Philadelphia County.  (Mar. 6 Sent'g Tr., Mar. 6, 2007.)[1]  Petitioner was sentenced as agreed between the parties to eleven and a half to twenty-three months imprisonment followed by five years reporting probation.  (*Id.* at

---

[1] The Plea was entered after Petitioner had completed jury selection but before opening statements.

13.)[2]  Petitioner requested two weeks to get his affairs in order before reporting to serve the sentence.  Judge Bronson specifically conditioned the sentence upon Petitioner's appearance in court on the surrender date of March 26, 2007.  Petitioner was warned that if he failed to appear on that date, the court would vacate the 11 ½ to 23 month sentence and impose a sentence on Petitioner *in absentia* of not less than 10 years nor more than twenty years imprisonment.  (*Id.* at 24-25.)  Judge Bronson specifically asked Petitioner, "Would you be willing, sir, to agree that if I let you out to have some time here to get your act together, that if you failed to appear, I can vacate the sentence and give you 10 to 20 years in state prison?"  (*Id.*)  Petitioner responded, "Without a doubt."  (*Id.* at 25-26.)  At the end of the March 6, 2007 hearing, the court stated to Petitioner, "I think that you're going to appear.  I'll give you a two week turn in date.  If you fail to appear, I'll vacate the sentence and I'll sentence you *in absentia* to 10 to 20 years plus 3 to 6 months for contempt of Court.  You'll be back, won't you, sir?"  (*Id.* at 25.)  Petitioner responded, "Definitely."  (*Id.* at 26.)[3]

Plaintiff failed to appear for his scheduled surrender on March 26, 2007.  On March 28, 2007, a hearing was held to determine whether Petitioner's failure to appear was willful.  (Mar. 28 Sent'g Tr., Mar. 28, 2007.)  Robert Spadaccini, a Detective with the District Attorney's Office, testified that he attempted to locate Petitioner by performing a custody check.  Detective

---

[2] The statutory maximum sentence was 20 years.  Petitioner's sentencing guidelines were 24 to 30 months.  There was, however, a mandatory minimum of not less than 3 nor more than 6 years.  Petitioner's prior criminal history consisted of a 1989 conviction for simple assault, 1993 conviction for possession with the intent to distribute controlled substances, a 1993 violation of the Uniform Firearms Act, and a 2000 conviction for statutory sexual assault.  (*Id.* at 12-18)

[3] Petitioner agreed to these terms on his own free will.  (*See* Mar. 6 Sent'g Tr. 4 (Court: "I need to be sure that you understand the rights you're giving up when you plead guilty.  It's also my job to be sure you're doing it of your own free will.  All right, sir?"  Petitioner:  "Yes, sir."); *see also id.* at 5, 15 (Petitioner testifying that he had not taken any drugs, alcohol, medication or anything that might impair his ability to understand what was happening, nor had he ever been treated for a mental illness).)

Spadaccini used a preliminary arraignment system to see if Petitioner had been arrested, he searched the Internet, he checked the Court's mainframe, he checked hospitals, and he attempted to go to Petitioner's last known address. (*Id.* at 5-10.) Detective Spadaccini determined that Petitioner had been arrested on March 16, 2007 for unauthorized use of a motor vehicle and that Petitioner had failed to appear for a preliminary hearing on March 21, 2007 related to that arrest. He also determined that Petitioner had failed to appear on March 23, 2007 for sentencing in a November, 2006 case involving the sale of heroin. (*Id.* at 7-8.)

After hearing testimony, Judge Bronson determined that Petitioner had willfully absented himself from the required surrender date. He then vacated the previously imposed sentence and imposed a sentence on Petitioner of ten to twenty years state imprisonment *in absentia*. (*Id.* at 10-11.) Petitioner's counsel filed a motion to reconsider the sentence. This motion was denied because Petitioner was still a fugitive. (Dkt., *Commonwealth of Pennsylvania v. Sheridan*, No. 1301418-2006 (Ct. C.P. filed Oct. 27, 2006).) Petitioner continued to be a fugitive and as a result no direct appeal was filed.

On April 17, 2007, Petitioner was arrested. (*Id.*) On May 29, 2007, the court lifted the outstanding bench warrant and imposed the ten-to-twenty-year-imprisonment sentence on Petitioner. (*Id.*)

On January 14, 2008, counsel filed a Petition under the Post-Conviction Relief Act ("PCRA"), alleging that the sentence of ten to twenty years imprisonment was an illegal sentence for contempt of court. (PCRA Pet., Jan. 14, 2008.) Petitioner argued that "[w]hen the Petitioner failed to turn himself [in] on a pre-determined date, the Court re-sentenced the Petitioner to 10 to 20 years incarceration without a hearing and in violation of the plea agreement that the trial court accepted"; and that "[i]f the court wanted to impose an additional sentence for failing to appear,

3

it should have held a contempt hearing and imposed [] another sentence for a clearly separate offense." (*Id.*)  On April 8, 2008, the court sent notice of its intent to dismiss the petition without a hearing, pursuant to Pennsylvania Rule of Criminal Procedure 907.  (Not., Apr. 8, 2008.)  After receiving Petitioner's response to that notice, the court dismissed the PCRA petition by Order of April 9, 2008.  (*See* Order, Apr. 9, 2008; Dkt., *Commonwealth of Pennsylvania v. Sheridan*, No. 1301418-2006 (Ct. C.P. filed Oct. 27, 2006).)

On May 2, 2008, Dolores M. Bojazi was permitted to withdraw as Petitioner's counsel.[4] On May 6, 2008, the court appointed new counsel, Emily Cherniack, for purposes of appealing the dismissal of the PCRA petition.  (*See* Dkt., *Commonwealth of Pennsylvania v. Sheridan*, No. 1301418-2006 (Ct. Comm. Pl. filed Oct. 27, 2006); Ltr. of Appt., May 6, 2008.)

On May 7, 2008, Petitioner filed an appeal from the dismissal of his PCRA petition in the Superior Court.  On appeal, Petitioner challenged both the legality and the discretion of the ten-to-twenty-year-imprisonment sentence.[5]  Petitioner argued that the sentence was illegal and that the court should have imposed a separate sentence for contempt.  In an opinion dated June 22, 2009, the Superior Court denied Petitioner's appeal.  It denied Petitioner's challenge of the discretionary aspects of the sentence because such aspects are not cognizable under the PCRA. (Super. Ct. Op. 2-3, June 22, 2009.)  It also rejected Petitioner's argument that the sentence was

---

[4] Ms. Bojazi had previously filed a motion to withdraw as counsel on January 31, 2008 because she believed that she may be called as a witness in this matter or that Petitioner may call her "ineffective."  (Mot. to Withdraw ¶ 3, Jan. 31, 2008.)

On May 26, 2008, Petitioner filed a request for Ms. Bojazi's withdrawal.  (Ltr., May 26, 2008.)  In Petitioner's May 26, 2008 request, Petitioner noted that he had encountered difficulties obtaining copies of (i) the "affidavit of probable cause," (ii) "signed plea agreement by colloquy" of March 6, 2007, (iii) "notice of entering counsel's appearance," and (iv) "notice of counsel's wtihdrawal."  (*Id.*)  Petitioner sought to proceed *pro se* with respect to the appeal of the dismissal of his PCRA petition.  (*Id.*)

[5] On July 1, 2008 Judge Bronson filed an opinion explaining his dismissal of the PCRA petition.  (Op., July 1, 2008)

vindictive and that the sentence was illegal.  (*Id.* at 3-9.)[6]  The order of dismissal was affirmed.  (*Id.* at 9.)  On Feburary 24, 2010, the Pennsylvania Supreme Court denied allocatur.  *Commonwealth v. Sheridan*, 989 A.2d 916 (Pa. 2010) (Table).

On June 1, 2010, Petitioner filed the instant Petition for Writ of Federal Habeas Corpus.  (Pet., ECF No. 1.)  The Petition was subsequently amended on December 13, 2010 to include a challenge to the state court's subject matter jurisdiction.  (Am. Pet., ECF No. 15; *see also* ECF No. 17 (Order accepting Amended Petition).)  With respect to this challenge, Petitioner argued that "[n]o legal authority exist[s] under state and federal law, that authorizes the release of a defendant, outside the established statutory and procedural laws.  Therefore, the state court's agreement with petitioner is void-ab-initio, outside state courts' subject matter jurisdiction."  (Am. Pet. 3.)  On April 20, 2011, Magistrate Judge Angell issued a Report and Recommendation recommending that the Petition be denied and dismissed without an evidentiary hearing.  (R&R, ECF No. 19.)  In the Report and Recommendation, Magistrate Judge Angell found that:  (i) all of the claims are procedurally defaulted except for double jeopardy and due process challenges to Petitioner's sentence; (ii) with respect to those procedurally defaulted claims, Petitioner is not excused; and (iii) Petitioner's double jeopardy and due process claims are meritless.  (*Id.*)

Petitioner filed Objections to the Report and Recommendation.  Petitioner objects to "the entire [] Report and Recommendations" as mischaracterizing the facts and law.  (Object. ¶¶ 4, 8, ECF No. 24.)[7]  Specifically, Petitioner objects to the section of the Report and Recommendation that states:

---

[6] Although not raised by Petitioner, the Superior Court found that there was no double jeopardy violation.

[7] Accordingly, the Court will review *de novo* the entire R&R.  *See infra*, § II.

> To the extent Petitioner raises new grounds related to the imposition of his sentence *in absentia* (allegations of ineffective assistance of counsel and alleged failure to provide him with a complete transcript), these claims were never raised in state court system and have not exhausted for habeas purposes. Because the time for filing an additional PCRA petition has expired, Petitioner cannot exhaust his state remedies and all new claims are procedurally defaulted. *See* 42 Pa. Cons. Stat. Ann. § 9545(b).

(R&R 7.) Petitioner argues that he should be excused from procedural default because he was denied effective assistance of counsel. (Object. ¶ 8.) Petitioner also asserts that there was a "substantial showing of the denial of constitutional rights." (*Id.* at ¶ 15.)

## II. LEGAL STANDARD

We review *de novo* those portions of the Report and Recommendation to which specific objections have been made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3); *see also Thomas v. Arn*, 474 U.S. 140, 141-42 (1985) ("[A] United States district judge may refer . . . petitions for writ of habeas corpus[] to a magistrate, who shall conduct appropriate proceedings and recommend dispositions . . . . [A]ny party that disagrees with the magistrate's recommendations 'may serve and file written objections' to the magistrate's report, and thus obtain *de novo* review by the district judge.") (citations and footnotes omitted). Moreover, we construe the pleadings of *pro se* litigants liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

## III. DISCUSSION

### A. All Claims Are Procedurally Defaulted Except the Double Jeopardy and Due Process Challenges to Petitioner's Sentence

A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of Section 2254. *See* 28 U.S.C. § 2254(b). Under Section 2254(c), a petitioner will not be deemed to have exhausted available state remedies if he had the right under the law of the state to raise, by any

available procedure, the question presented, but failed to do so. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (noting that "we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts"); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) (same). "The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally guaranteed rights." *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000) (quoting *Caswell v. Ryan*, 953 F.2d 853, 856 (3d Cir. 1992)) (internal quotation marks omitted).

Exhaustion requires the petitioner to present to the state courts the same factual and legal theory supporting his claim. *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990). If the petitioner presented a claim to the state courts, but the state courts refused to address the merits of the claim based on a state law ground that is independent of the federal question and adequate to support the judgment, the claim is considered procedurally defaulted. *Lambrix v. Singletarv*, 520 U.S. 518, 522 (1997). It is the petitioner's burden to prove such exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

We agree with and adopt entirely the Magistrate Judge's assessment that all but Petitioner's double jeopardy and due process claims are procedurally defaulted. (See R&R, Section II(B)(2)). Accordingly, we may not consider the merits of these defaulted claims unless Petitioner establishes either "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

### B. Petitioner Has Demonstrated Neither Cause and Prejudice Nor a Fundamental Miscarriage of Justice to Excuse the Procedural Defaults

Petitioner asserts that "attorneys are seasoned professionals, trained to detect constitutional errors and employ their skills to remedy them" (*id.* at ¶ 10) and that "[i]t is counsel's statutory as well as professional obligation . . . to insist upon a full and fair state proceeding (*id.* at ¶ 12). He contends that his post-conviction counsel was ineffective because the facts underlying the instant habeas claims were "reasonably discoverable, but were not discovered and timely advanced," due to her incompetence. (*Id.* at ¶ 14.)[8] The ineffective assistance he received at the post-conviction level, he argues, should constitute cause for procedurally defaulting his habeas claims. (Object. ¶¶ 8, 10.)

It is true that "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012); *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014). Where a habeas petitioner argues that his initial-review post-conviction counsel failed to raise a claim, thus procedurally defaulting it, the petitioner can overcome that default if he shows "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say [he] must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

Claims of ineffective assistance of counsel are evaluated using the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, the

---

[8] In his original Petition, he argues that "[t]here was [an] unconstitutional break-down" during his trial and that he had a "federally protected right to a jury trial and direct appeal" even if he failed to appear for trial or sentencing. (Pet. 10.) Petitioner asserts that Ms. Bojazi failed to "implement[] . . . any effective adversary-trial-representation whatsoever" and that the ineffective assistance of counsel violated his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights. (*Id.*) He argues that Ms. Bojazi's ineffective assistance led to "the subsequent guilty-plea in absentia." (*Id.*)

petitioner must demonstrate (i) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (ii) that the petitioner suffered prejudice as a result of the deficiency. *Id.* at 687.  There is a strong presumption that counsel is effective, and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).  It is not necessary for the court to "guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." *Id.* at 85; *see also Blystone v. Horn*, 664 F.3d 397, 419 (3d Cir. 2011) ("Surmounting *Strickland*'s high bar is never an easy task.") (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)) (internal quotation marks omitted).  To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Chambers*, 807 A.2d 872, 883 (Pa. 2002) (quoting *Strickland*, 466 U.S. at 695-96)).  The court must consider the totality of the evidence, and the burden is on the petitioner. *Strickland*, 466 U.S. at 687, 695.

Petitioner fails to meet the *Strickland* standard.  He alleges simply that his trial counsel was ineffective "by way of; no implementation of any effective adversary-trial-representation whatsoever/which worked to the DETRIMENT of [his] right's to [a] fair and impartial trial." (Pet. 10.)  Petitioner's general allegations of dissatisfaction fall far short of the high bar *Strickland* has set.  We have reviewed the record and see no evidence of ineffective assistance from Petitioner's counsel.

Furthermore, Petitioner has not demonstrated prejudice.  He does not contend that counsel disregarded any explicit instruction by Petitioner. *See Solis v. United States*, 252 F.3d 289, 293-94 (3d Cir. 2001) ("Prejudice is presumed from counsel's failure to file a notice of

appeal when so requested by a client."). He does not assert that counsel failed to consult with him regarding legal strategies.[9] Nor has Petitioner demonstrated that there is a reasonable probability that but for counsel's alleged errors, the result would have been different.

Therefore, having failed to demonstrate that his underlying ineffective-assistance-of-counsel claim is substantial, Petitioner's procedural default cannot be excused under the limited exception provided by *Martinez*. *See Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014); *see also Martinez*, 132 S. Ct. at 1315, 1318; *Hagwood v. Wenerowicz*, No. 12-5404, 2013 WL 5786178, *1-2 (E.D. Pa. Oct. 24, 2013).

Finally, Petitioner has failed to establish a "fundamental miscarriage of justice," as an alternative to showing cause and prejudice, since he failed to demonstrate "actual innocence." *See Schlup*, 513 U.S. at 324; *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010); *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007). To demonstrate actual innocence, Petitioner must do more than summarily assert that he is innocent; he must present "new reliable evidence" of his innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" not presented at trial. *Schlup*, 513 U.S. at 324; *Houck*, 625 F.3d at 94. In addition, he must demonstrate that the new evidence would make it more likely than not that "no reasonable juror would find [Petitioner] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006); *see Schlup*, 513 U.S. at 316; *Houck*, 625 F.3d at 93, 95-97. Here, Petitioner does not even argue that his actual innocence should excuse the procedural defaults; he has not offered, and we are not aware of, any new evidence to support such a claim. *See Schlup*, 513 U.S. at 329; *see also Staton v. Smeal*, No. 09-5539, 2011 WL 4482514, at *7 (E.D. Pa. July 1, 2011) (finding that actual innocence exception to procedural default did not apply because

---

[9] We note that at the March 6, 2007 sentencing hearing, Petitioner indicated that he was satisfied with the services of Ms. Bojazi. (Mar. 6 Sent'g Tr. 15.)

petitioner did not argue actual innocence or provide any new evidence that "no reasonable juror would have found him guilty beyond a reasonable doubt").[10]

### C. For the Properly Exhausted Claims, There Is No Constitutional Violation

Petitioner's constitutional claims of double jeopardy and due process appear to have been exhausted in state court. They are, nevertheless, meritless.

Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
        (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Review under Section 2254(d) is limited to the record that was before the state court. *See Cullen v. Pinholster*, ---U.S. ---, 131 S. Ct. 1388, 1401 (2011) ("Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so. Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'") (citation omitted); *see also Roundtree v. Balicki*, 640 F.3d 530, 538 (3d Cir. 2011) ("Importantly, the evidence against which

---

[10] Indeed, the record supports otherwise. At the March 6, 2007 plea and sentencing hearing, Petitioner, under oath, admitted his guilt. Counsel for the Commonwealth of Pennsylvania described a series of events that a police officer would have testified about if trial were to proceed. The series of events included (i) an exchange of United States currency, (ii) an exchange of "a large, clear plastic bag" containing what appeared to be crack cocaine and (iii) testimony that a Narcotics Field Unit officer saw Petitioner sitting with two other co-defendants at a kitchen table, on top of which was "a black dinner plate with cocaine residue and a razor blade and . . . 19 packets of cocaine, different colored packets." When the court asked Petitioner whether he "agree[d] in substance that that happened," Petitioner responded, "Yes, sir." (*See* Mar. 6 Sent'g Tr. 8-13.)

11

a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication."). As the Third Circuit explained, "[i]n light of *Pinholster*, district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d). Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record." *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011).

The Supreme Court has stressed the "highly deferential" review that federal courts must accord to the state court's decision:

> We have explained that an unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotations and citations omitted). The Court further noted:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citations omitted); *see also Wiggins v. Smith*, 539 U.S. 510, 511 (2003) (noting that it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of U.S. Supreme Court precedent); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, the state court's decision must be shown to be not only erroneous, but objectively unreasonable); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"In determining whether a state court unreasonably applied federal law under 28 U.S.C. § 2254(d)(1), 'a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'" *Wenerowicz*, 663 F.3d at 630 (quoting *Harrington*, 562 U.S. at 102). Thus, "[t]he question is not whether the state court's holding was wrong, but whether it was reasonable," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

    1.  *Double Jeopardy Claim*

The Pennsylvania court did not unreasonably apply federal law with respect to Petitioner's double jeopardy claim. In *United States v. DiFrancesco*, 449 U.S. 117 (1980), the

United States Supreme Court determined whether a modification of sentence increasing punishment violated the double jeopardy clause of the United States Constitution. The Court concluded that the double jeopardy clause is implicated only when the defendant has a legitimate expectation that the sentence is final. *Id.* at 136-39. "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137.

The Superior Court's finding that Petitioner "had no legitimate expectation of finality in his negotiated sentence" was not an unreasonable application of federal law. (Super. Ct. Op. 8.) Courts have found that the fact that a petitioner's probation was revoked and he was sentenced to an additional term of imprisonment does not violate the protection against double jeopardy, even when the sentence is in addition to that contemplated in his plea agreement. *See, e.g.*, *Williams v. Gillis*, No. 00-159, 2002 WL 84440, at *3 (E.D. Pa. Jan. 17, 2002) (re-sentencing, following probation revocation, to a term of imprisonment longer than contemplated by the terms of a plea agreement is not illegal); *Banks v. Chester County*, No. 07-4722, 2008 WL 828105, at *6 (E.D. Pa. Mar. 25, 2008) (same). Here, Petitioner requested two weeks to get his affairs in order before reporting to serve his sentence. Petitioner was specifically warned that if he did not appear on his surrender date, his 11 ½ to 23 month sentence would be vacated and he would be sentenced *in absentia* to ten to twenty years in prison. Petitioner agreed to this in open court. He then failed to appear. There was no expectation of finality here.

        2.    *Due Process Claim*

Likewise, there is no merit to Petitioner's claim that the state court's vacating of the eleven-and-a-half to twenty-three month sentence and increase of the sentence to ten to twenty

years demonstrate judicial vindictiveness in violation of Petitioner's due process rights. Nor is there any merit to the argument that the revised sentence was an illegal sentence for contempt.[11]

During the March 6 hearing, the court made it clear on two occasions that if Petitioner failed to appear in court on the surrender date, it would vacate the agreed upon sentence and instead sentence Petitioner *in absentia* to ten to twenty years state imprisonment. Petitioner advised the court that he understood and agreed to those terms at least two times at that hearing. The court's subsequent increase of Petitioner's sentence, upon Petitioner's failure to appear on the surrender date, does not indicate vindictiveness by the court.[12] The Superior Court's determination on this issue was not contrary to or an unreasonable application of federal law. In addition, nothing in the record shows "actual vindictiveness . . . for having exercised guaranteed rights." *Wasman v. United States*, 468 U.S. 559, 568 (1984). Accordingly, Petitioner's petition for habeas relief based on a due process claim must be denied.

### D. Certificate of Appealability

A prisoner seeking a certificate of appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

---

[11] To the extent that Petitioner argues that the court's failure to provide Petitioner with a complete transcript of the sentencing hearing, this argument will be dismissed as well. (*See* Pet. 12(A).)

[12] Judge Bronson explained in a Supplement to Petitioner's Indictment that the "[n]ew sentence" of ten to twenty years state imprisonment "reflects the agreed upon sentence by defendant and defense counsel that was to be imposed if defendant failed to appear." (Supp. Indict., Mar. 28, 2007.) This "new sentence" does not represent a sanction for contempt.

Since Petitioner is unable to meet this standard, no basis for a certificate of appealability exists here.

## IV.   CONCLUSION

For these reasons, Petitioner's Objections to the R & R will be overruled, the Report and Recommendation by Magistrate Judge Angell will be adopted, and the Petition for Writ of Habeas Corpus will be denied and dismissed without an evidentiary hearing.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**